UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

DELILAH SALGADO,

                                Plaintiff,                  22-CV-06910 (LAK)(SN)

              -against-                           **OPINION & ORDER**

NYC MEDICAL PRACTICE, P.C. d/b/a GOALS
AESTHETICS & PLASTIC SURGERY,

                              Defendant.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

        In March 2022, Plaintiff Delilah Salgado underwent a surgical procedure with Defendant Goals Aesthetics and Plastic Surgery. Before the procedure, the parties executed several written agreements, including a contract for the surgery entitled "Cosmetic Surgery Agreement" (the "Agreement"). Following the procedure, Defendant allegedly posted multiple identifying photos of Plaintiff on its Instagram account. The question before the Court is whether the arbitration clause contained within the Agreement governs Plaintiff's claims that Defendant violated the False Copyright Management Information ("CMI") provision of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, and N.Y. Civil Rights Law § 51. I find that Plaintiff's claims are not within the scope of the arbitration clause. Accordingly, Defendant's motion to compel arbitration is DENIED.

## BACKGROUND

        On March 18, 2022, Plaintiff underwent a cosmetic surgical procedure, which was performed by Defendant. In advance of that procedure on March 7, 2022, the parties executed

the Agreement, which contained an arbitration clause. See ECF No. 1-1 at 9-10. That clause reads, in relevant part:

> The Parties to this Agreement agree to arbitrate any claim, dispute, [or] controversy, including all statutory claims and any state or federal claims, that may arise out of [or] relate to this Agreement including the enforcement, breach or interpretation of this Agreement. . . . [I]f any subsequent agreement is entered into between the parties related to this Agreement that does not include an arbitration clause, the enforcement, alleged breach or interpretation of such agreement shall be adjudicated solely in arbitration as well, it being the parties' intention that all issues and disputes between the parties hereto be handled solely in arbitration and not in a court of law or otherwise.

Id. Plaintiff's initials appear directly below the arbitration clause, and her signature appears at the bottom of the Agreement's final page.

That same day, Plaintiff was presented with an "Authorization for Use or Disclosure of Patient Photographic & Video Images" (the "Image Use Authorization"). The Image Use Authorization would have allowed Defendant to use Plaintiff's "name, photographic/video images, and/or written testimonials . . . for marketing purposes." Id. at 11. The word "Decline" is printed below Plaintiff's signature, and Plaintiff alleges that she refused to authorize the use of her image at this time.[1] Compl., ¶ 17.

The complaint alleges that during a follow-up visit, Plaintiff consented to Defendant's use of two non-identifying photos of her, which she was assured would not include her face. Despite her limited consent, Plaintiff alleges that "[b]etween March 2022 and June 2022, Goals posted four self-identifying photos of Plaintiff that Goals obtained from Plaintiff's own Instagram page and from private messages with Plaintiff, without authorization, to its Instagram

---

[1] The parties also executed a "Lateness/Force Majeure Rider to [the Agreement]," "Promotional Price Rider to [the Agreement]," "Credit Card Authorization Form," "Authorization for Recurring Credit Card Payments," "GOALS Plastic Surgery Smoking Attestation Form," and "ATTENTION GOALS PLASTIC SURGERY NON-SMOKING POLICY." Id. at 11-15, 17-18.

'Story.'" Compl., ¶ 23. These photos contained a watermark bearing Defendant's name as well as a label identifying the type of procedure Plaintiff had received. Compl., ¶ 22.

On August 14, 2022, Plaintiff filed a complaint alleging that Defendant's actions violated the DMCA, by providing false CMI, and New York law, by using Plaintiff's pictures for its own advertising without her consent. Defendant moved to compel arbitration on October 25, 2022, asserting that Plaintiff's claims are subject to mandatory arbitration pursuant to the Agreement.

## DISCUSSION

### I. Legal Standard

The Federal Arbitration Act ("FAA") governs "any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Corp., 460 U.S. 1, 24 (1983). Pursuant to the FAA, an arbitration provision in a contract involving a commercial transaction is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 127 (2d Cir. 2011). A district court has "no discretion regarding the arbitrability of a dispute when the parties have agreed in writing to arbitration." Leadertex, Inc. v. Morganton Dyeing & Finishing Grp., 67 F.3d 20, 25 (2d Cir. 1995) (internal citations omitted).

The FAA embodies an "emphatic federal policy in favor of arbitral dispute resolution." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985). Indeed, the Court of Appeals has stated that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we 'have often and emphatically applied.'" Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (quoting Leadertex, 67 F.3d at 25). Accordingly, "where . . . the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." ACE

Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 29 (2d Cir. 2002); see also Collins v. Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 2005) ("[F]ederal policy requires us to construe arbitration clauses as broadly as possible." (internal citation and quotation marks omitted)). If an issue is "referable to arbitration," proceedings before the district court must be stayed until "such arbitration has been held in accordance with the terms of the agreement." 9 U.S.C. § 3.

In determining "whether a particular dispute falls within the scope of an agreement's arbitration clause . . . . a court should classify the particular clause as either broad or narrow." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001). A clause is broad if it uses "expansive language," and will indicate a presumption that the parties "intend all issues that touch matters within the main agreement to be arbitrated . . . ." Id. at 225 (internal quotation marks omitted).

"[F]or purposes of arbitration, a collateral agreement is a separate, side agreement, connected with the principal contract which contains the arbitration clause." Id. at 228 (internal quotation marks omitted). When an agreement is clearly collateral:

> a court should test the presumption by reviewing the allegations underlying the dispute and by asking whether the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. If the answer is yes, then the collateral dispute falls within the scope of the arbitration agreement; claims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement.

Collins & Aikman Prod. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995).

Under the FAA, state law generally governs issues of contract interpretation. See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 46 (2d Cir. 1993). Plaintiff is a resident of New York, and Defendant is incorporated and maintains its principal place of business there as well. The Agreement also designates New York law as

governing its terms. Under New York law "where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole." Tomhannock, LLC v. Roustabout Res., LLC, 33 N.Y.3d 1080, 1082 (2019) (citation and internal quotation marks omitted).

## II.     Whether This Dispute is Subject to Arbitration

### A.     The Arbitration Agreement is Broad

The arbitration clause contained within the Agreement is broad. The clause purports to cover "any claim, dispute, [or] controversy, including all statutory claims and any state or federal claims, that may arise out of relate to this Agreement including the enforcement, breach or interpretation of this Agreement" as well as "any subsequent agreement . . . between the parties related to this Agreement[.]" This clause mirrors those that are frequently deemed broad by the Court of Appeals. See Collins, 58 F.3d at 20 (referring to the language "any claim or controversy arising out of or relating to the agreement" as being "the paradigm of a broad clause."); see also Paramedics Electormedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 649 (2d Cir. 2004) ("any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement"); Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d. Cir. 1998) ("Any dispute, controversy or claim arising under or in connection with this Agreement . . . .").

### B.     Plaintiff's Claims are Not Within the Scope of the Arbitration Agreement

Having identified the arbitration clause as broad, the Court is required to presume that the parties "intend all issues that touch matters within the main agreement to be arbitrated . . . ." Louis Dreyfus Negoce S.A., 252 F.3d at 225 (internal quotation marks omitted).

5

Plaintiff contends that this suit is outside the scope of the arbitration clause because the claims do not arise out of or relate to the Agreement. Conversely, Defendant contends that "the claims relate to advertising of Defendant through Plaintiff's photographs which relate to Plaintiff's ultimate contractual agreements with Plaintiff in that it is related to her plastic surgery obtained performed [sic] by Defendant upon Plaintiff." Def. Mem. of Law at 7 (ECF No. 9). In short, because the Agreement relates to the procedure, and the photographs promote the procedure, Defendant argues the claims are covered.

The Agreement unquestionably relates to the surgery performed by Defendant on Plaintiff, including payment for, scheduling and cancellation of, and recovery from that surgery. It also contains a provision requiring Plaintiff to give Defendant an opportunity to remedy any dissatisfaction before posting negative reviews online. It includes a merger clause. The Agreement does not, however, address the use of Plaintiff's name, image, likeness, or photographs.

Therefore, the only question before the Court is one of simple contract interpretation: whether Plaintiff's claims "arise out of" or are "related to" the Agreement. See ECF No. 1-1 at 9. This language, used by the parties themselves, is in harmony with the mandatory presumption that they intended for all issues that "touch matters" within the Agreement to be arbitrated.

Plaintiff claims that the use of her image to promote the Defendant's services violates her rights under the DCMA and New York law. To decide whether that claim is meritorious, the Court does not need to consider any term found in the Agreement. The Agreement makes no mention of the use of Plaintiff's likeness, let alone the infringement of her copyright in her own photos. It concerns only the surgery itself—that is, payments, scheduling, cancellation, and results—and a disparagement limitation.

To the extent Defendant is arguing that Plaintiff's claims relate to the Agreement because they arise out of Defendant's subsequent efforts to market the same surgery she received, this sort of tertiary connection will not suffice to compel arbitration. Defendant cites no case in which an analogous dispute has been deemed subject to an analogous arbitration agreement and fails to make a cogent argument that the claims here are "related to" the Agreement in any way beyond the fact that they both concern Plaintiff's body. What if Plaintiff recorded a song about her surgery and Defendant played that song in an advertisement without permission? Would that copyright claim also be subject to arbitration? Such claim would clearly not touch matters within the Agreement, and neither do the ones asserted by Plaintiff in this suit.

Finally, the Agreement provides that "if any subsequent agreement is entered into between the parties related to this Agreement that does not include an arbitration clause, the enforcement, alleged breach or interpretation of such agreement shall be adjudicated solely in arbitration as well." In its brief, the Defendant references an "agreement" permitting the use of Plaintiff's photographs. Def. Mem. of Law at 4. Defendant does not specify what agreement it is referring to.[2] Plaintiff alleges that she permitted the use of *certain* photographs, but not the ones that Defendant published. Compl., ¶¶ 21, 23. Accordingly, there is no evidence of an agreement to use the at-issue photographs. And, for the reasons stated, any such agreement would likely not be "related" to the surgery Agreement.

The parties' agreement to arbitrate any disputes arising out of or related to the Agreement cannot be practically interpreted to evince an intent to arbitrate claims like the ones presented here. Thus, Plaintiff's claims are not subject to the arbitration clause within the Agreement.

---

[2] Neither party references the Image Use Authorization, which of course was declined and therefore could not constitute a "subsequent agreement" in any event.

## CONCLUSION

Defendant's motion to compel arbitration is DENIED. The Clerk of Court is requested to terminate the motion at ECF No. 8. Defendant shall answer the Complaint within 21 days of this Order.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   December 28, 2022
         New York, New York